UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY GRECH,                                    Case  No. 08-10729

             Plaintiff,                          John Corbett O'Meara
vs.                                                United States District Judge

FORD MOTOR COMPANY,                                Michael Hluchaniuk
                                                   United States Magistrate Judge

             Defendant.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANT'S MOTION FOR PARTIAL DISMISSAL (Dkt. 59)

## I.    PROCEDURAL HISTORY

*Pro se* plaintiff, Kimberly Grech, initially filed her complaint in this matter

on February 21, 2008.  (Dkt. 1).  The complaint was amended once (Dkt. 26) and

it has been answered by defendant Ford Motor Company (Ford).  (Dkt. 30).  The

complaint alleges that Ford violated plaintiff's rights under (1) the Employee

Retirement Income Security Act, (2) the Americans With Disabilities Act, (3) the

Family and Medical Leave Act, and (4) Title VII/Rehabilitation Act.  (Dkt. 26).[1]

_____

[1] Plaintiff has also filed a motion to reinstate her claims under the Michigan
Persons with Disabilities Act and the Elliott-Larsen Civil Rights Act, which were
previously dismissed by Judge O'Meara.  (Dkt. 112, 6).  In light of the
undersigned's recommendation to dismiss all of plaintiff's non-ERISA claims, this
motion will be denied as moot via separate order.

A scheduling order was entered on August 20, 2008, listing various dates for normal events associated with the case to be completed, including discovery. (Dkt. 24). District Judge John Corbett O'Meara referred this matter to the undersigned for all pretrial proceedings. (Dkt. 32).

By way of background, plaintiff filed a motion for protective order to require that, if Ford were to take her deposition, that it take her deposition using written questions and not be permitted to videotape her deposition. (Dkt. 28). After a full briefing and a telephonic hearing, the undersigned granted plaintiff's motion for protective order, in part. (Dkt. 46). Plaintiff appealed this decision to the District Court. (Dkt. 53, 57). Before the appeal was resolved, on November 6, 2008, Ford filed a motion to dismiss all of plaintiff's non-ERISA claims, based on plaintiff's failure to submit to a deposition. (Dkt. 59). Plaintiff filed a response to Ford's motion to dismiss on December 8, 2008. (Dkt. 70). In her response, among many other stated reasons, plaintiff argued that she did not have to submit to a deposition until the District Court resolved her appeal of the October 21, 2008 Order. (Dkt. 70). The District Court disposed of plaintiff's appeal on December 30, 2008, affirming the decision of the undersigned. (Dkt. 86). Given plaintiff's position regarding her deposition, after resolution of plaintiff's appeal, the undersigned issued an order allowing plaintiff the opportunity to supplement her

response to the motion to dismiss. (Dkt. 102). Plaintiff filed her supplemental

response on March 30, 2009 and Ford filed a supplemental reply on March 31,

2009. (Dkt. 104, 105). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the

Court **GRANT** defendant's motion for partial dismissal and **DISMISS** all of

plaintiff's non-ERISA claims **WITH PREJUDICE**.

## II.     STATEMENT OF FACTS

### A.     Case History and Progress

Ford's motion to dismiss requires a detailed recitation of plaintiff's actions

in this case as it relates to her deposition and otherwise, so that the grounds for the

undersigned's recommendation are clear and complete. In plaintiff's motion for

protective order regarding Ford's notice of her deposition, filed on September 9,

2008, she argued that she was entitled to a protective order, including: (1) that the

deposition was scheduled without discussion with her; (2) the deposition is in

violation of paragraph 12 of the August 20, 2008 Scheduling Order; (3) that other

issues remain unresolved; (4) that no scheduling conference has been held; (5) that

Ford must notify plaintiff prior to filing documents with the Court; (6) that other

options are available; and (7) that Ford wants to record the deposition both

stenographically and by video recorder. (Dkt. 28). On October 21, 2008, the

undersigned granted her motion in part and denied it in part, after holding a

telephonic hearing.  (Dkt. 46) (October 21 Order).

On October 23, 2008, plaintiff filed a request for an extension of time to

object to the October 21 Order.  (Dkt. 53).  Plaintiff objected to Ford noticing her

deposition for October 23, 2008 because of her pending appeal of the October 21

Order and because of a medical appointment on that date.  Plaintiff wrote that she

"clearly informed Counsel for the Defendant that she has a medical appointment

scheduled on October 23, 2008.  Defendant was notified of this medical

appointment on October 16, 2008 but Counsel refused to change the date."  (Dkt.

53, p. 2).  According to Ford's response, plaintiff disingenuously suggests that she

would have willingly submitted to the deposition, had it not been for her doctor's

appointment, had the deposition not been moved to the Federal Building in Ann

Arbor, and had she not had purported difficulties receiving the deposition notice.

(Dkt. 60).  Ford suggested that plaintiff never had any intention of appearing for a

deposition because she does not believe she should have to and also feels that she

cannot proceed in this litigation without counsel.  (Dkt. 60).  On December 30,

2008, Judge O'Meara affirmed the undersigned's decision on plaintiff's motion

for protective order, concluding that the undersigned "correctly found that Plaintiff

had failed to meet her burden for obtaining a protective order that would excuse her from giving a deposition."  (Dkt. 86, p. 3).

On October 15, 2008, plaintiff filed a motion entitled: "Plaintiff['s] Motion For Order Requiring Defendant To Immediately Answer Plaintiff's Disability Benefit Appeal and Time Delay/Extention [sic] In These Preceedings [sic]. Plaintiff['s] Request Scheduling Hearing."  (Dkt. 44).  In that motion, plaintiff appeared to seek the following relief:

1.      an order that Ford answer plaintiff's benefit appeal;

2.      an order that Ford immediately process plaintiff's benefits;

3.      a delay in the proceedings until plaintiff can obtain counsel or her health allows her to continue litigating this matter;

4.      the Court's "understanding" that she has tried to get a lawyer and does not have sufficient funds;

5.      a scheduling hearing; and

6.      an order that Ford accrue costs for plaintiff's copying fees.

(Dkt. 44, 55).  The Court denied plaintiff's motion in its entirety.  With respect to the request to delay the proceedings, the Court cautioned plaintiff:

> An indefinite delay of the proceedings would be
> prejudicial to defendant and plaintiff offers no basis in
> the law for any such delay, which is disfavored in the

federal court system.  "Although federal courts afford *pro se* litigants some leniency on matters that require legal sophistication, such as formal pleading rules, the same policy does not support leniency from court deadlines and other procedures readily understood by laypersons, **particularly where there is a pattern of delay or failure to pursue a case**." *Weaver v. Estes, 2005 WL 2388284 (W.D. Ky. 2005)* (emphasis added), citing, *Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991)*.  That is, plaintiff may not simply "cause[] a lawsuit to be filed," and then "fail[] to comply with even the most basic and fundamental procedural rules." *Mason v. Hayes Lemmerz International Commercial Highway, 2008 WL 123870, *2 (N.D. Ohio 2008)*.

(Dkt. 55).  As part of this Order, the Court also prohibited plaintiff from

communicating with the Court except in writing:

> Various court personnel have spent an inordinate amount of time on the telephone with plaintiff.  As has been explained to plaintiff on numerous occasions, court personnel are prohibited from providing her with legal advice and may only answer the most basic of procedural questions.  There are hundreds of *pro se* litigants who appear in this Court regularly, many of whom have health issues and physical disabilities.  Other *pro se* litigants are not provided with legal advice by court personnel and are not afforded any particular "special" treatment.  Based on the foregoing, the Court orders that plaintiff may only communicate with the Court in writing.

(Dkt. 55).  The Court went on to remind plaintiff that, "while the Court

understands that plaintiff is not represented by counsel, she is the person who

initiated this lawsuit and she, like any other civil litigant before this Court, including *pro se* litigants, must abide by the rules.  'It is incumbent on litigants, even those proceeding *pro se*, to follow ... rules of procedure.'  *Fields v. County of Lapeer*, 2000 WL 1720727 (6th Cir. 2000).'"  (Dkt. 55).

On October 27, 2008, plaintiff moved the Court to order Ford to comply with Local Rule 7.1.  (Dkt. 54).  In denying this request, the Court again explained how Local Rule 7.1 operates (which had previously been done in the October 21 Order).  (Dkt. 71).  Plaintiff also claimed that Ford violated Rule 26 because it has refused to issue a new certificate of service for the discovery sent to plaintiff.  For example, plaintiff complained that Ford's certificate of service pertaining to her deposition notice was dated October 22, 2008, but that she did not receive it until October 25, 2008.  (Dkt. 54, p. 7).  The Court found no material errors in any certificate of service prepared by Ford's counsel or any violations of the rules in its discovery practices and denied plaintiff relief on this issue.  (Dkt. 71).  Plaintiff again complained about the lack of a scheduling conference in this case, despite the previous explanation by the Court that one of the exceptions to that general rule that no discovery may be conducted before a scheduling conference is where discovery is authorized by court order, which is precisely what occurred in this case.  (Dkt. 46, 71).  Plaintiff also asked the Court to order Ford to file all

Report and Recommendation
Motion for Partial Dismissal
*Grech v. Ford Motor Co.*; 08-10729

discovery materials with the Court.  (Dkt. 54).  The Court concluded that not only had plaintiff failed to cite any authority for her request, such a practice would generally violate the Local Rules, which prohibit the filing of discovery material with the Court.  (Dkt. 71).

On November 20, 2008, plaintiff filed a motion to compel Ford's discovery responses.  (Dkt. 64).  Plaintiff, however, filed her motion to compel before Ford's discovery responses were even due, in violation of the Federal Rules of Civil Procedure.  Her motion was, therefore, denied.  (Dkt. 71, 79).

On December 9, 2008, the Court entered a second order regarding plaintiff's communication with court staff.  (Dkt. 69) (December 9 Order).  As set forth in the December 9 Order, since "the issuance of the October 29 Order, plaintiff has sent approximately five separate letters, via facsimile, addressed to the undersigned's courtroom deputy, none of which have been filed with the Clerk of the Court." (Dkt. 69).  In the December 9 Order, the Court warned plaintiff that she could be sanctioned "should she continue to disregard the Federal Rules, the Local Rules, and this Court's October 29 Order" and that "**[s]uch sanctions could include dismissal of her lawsuit with prejudice**."  (Dkt. 69) (emphasis in original).

On December 19, 2008, plaintiff filed a motion to strike (Dkt. 78) Ford's motion for judgment (Dkt. 74), arising "from her apparent perception that the

Court unfairly ordered one of her briefs stricken for failure to comply with the

page limitation found in the Local Rules for the Eastern District of Michigan."

(Dkt. 80). In denying plaintiff's motion, the Court explained that a "brief in

support of a motion or a response to motion is subject to the 20 page limitation set

forth in Local Rule 7.1(c)(3)(A)" and that "defendant's brief supporting its motion

for judgment (Dkt. 74) is subject to the 20 page limitation." (Dkt. 80). The Court

also cautioned plaintiff, once again, about her obligation to follow the rules:

> The Court cautions plaintiff, once again, that she is
> responsible for reading and following all the rules
> applicable to her litigation. Local Rule 7.1(c)(3) is plain
> and clear. Plaintiff has been *repeatedly* informed, both
> in writing and verbally, of her obligation to follow the
> rules and conduct her litigation just as any other party
> (represented or not) is required to do.
> * * *
> Should plaintiff continue to file such frivolous motions,
> the Court will not hesitate to impose sanctions on her,
> including recommending dismissal of her complaint.

(Dkt. 80).

On December 22, 2008, plaintiff filed another motion to strike (Dkt. 81)

Ford's reply (Dkt. 76) to plaintiff's response to Ford's motion to dismiss because

she believed it exceeded the page limitations set forth in Local Rule 7.1. (Dkt.

81). In the order denying the motion to strike, the Court gave "plaintiff the benefit

of the doubt...that she filed the current motion to strike before seeing the Court's

December 19, 2008 Order."[2]  (Dkt. 101).  The Court again explained how plaintiff

had misunderstood the varying page limitations set forth in Local Rule 7.1(c) and

denied the motion.  (Dkt. 101).  The Court provided additional guidance and

cautionary instructions to plaintiff:

> The Court cautions plaintiff, once again, that she is
> responsible for reading and following all the rules
> applicable to her litigation.  Local Rule 7.1(c)(3) is plain
> and clear.  A complete current copy of the Local Rules
> may be found on-line at
> http://www.mied.uscourts.gov/Rules/LocalRules/CivilRu
> les.cfm.  A complete and current copy of the Federal
> Rules of Civil Procedure may be found on-line at
> http://www.uscourts.gov/rules/newrules4.html.  The
> undersigned suggests that plaintiff spend considerable
> time acquainting herself with the rules before she files
> any additional motions with the Court.  Plaintiff has been
> *repeatedly* informed, both in writing and verbally, of her
> obligation to follow the rules and conduct her litigation
> just as any other party (represented or not) is required to
> do.  *See e.g.*, *Fields v. County of Lapeer*, 2000 WL
> 1720727 (6th Cir. 2000) ("It is incumbent on litigants,
> even those proceeding *pro se*, to follow ... rules of
> procedure.").  Should plaintiff continue to file frivolous
> motions, the Court will not hesitate to impose sanctions
> on her, including recommending dismissal of her
> complaint.

---

[2] Unfortunately, plaintiff apparently failed to respond to Ford's requests that
she withdraw this motion to strike, based on the Court's December 19, 2008
Order.  (Dkt. 91, Ex. A).

(Dkt. 101).  The above recitation of plaintiff's actions in this case is by no means exhaustive and represents only a portion the motions and objections filed by plaintiff in this case.

      B.    <u>Ford's Motion to Dismiss</u>

According to Ford, plaintiff's case has been pending for over eight months, and to date, she has filed over 25 pleadings and/or motions, and yet, she refuses to schedule or appear for her deposition, "a fundamental element of discovery that is critical to Ford's defense."  (Dkt. 59).  Ford asserts that, in many of her filings, plaintiff repeatedly asks the Court to delay the proceedings because she does not feel comfortable proceeding without counsel and/or because she believes it will worsen her health and also repeatedly asks to be excused from following the Rules of Civil Procedure by being given additional time to object to every order that is entered in her case.  (Dkt. 59).  Ford argues that plaintiff "considers no decision or order entered by this Court to be authoritative and has submitted – and will likely continue to submit – pleading after pleading seeking to revisit the same issues (appointment of counsel, delay of litigation and discovery, excusing her from giving a deposition, etc.) hoping that her incessant badgering will cause the Court to throw up its hands and give Plaintiff the relief she seeks."  (Dkt. 59).

Ford relies on several of the filings described above to support its argument and also points the Court to many other instances of claimed misconduct by plaintiff.  For example:

- On October 8, 2008, Ford sent Plaintiff a letter via electronic and US mail offering several dates in October for her deposition. (Exh. 3.) Plaintiff did not respond, but later claimed that she did not receive either communication.

- On October 10, 2008, Ford sent Plaintiff a notice for her deposition set for October 23, 2008. (Exh. 4.) Around this same time, Plaintiff began suggesting that she was not receiving mail from Ford, including her deposition re-notice. However, Plaintiff refused to respond to Ford's inquiries about whether she had or had not received the notice. (Exh. 5.) Consequently, Ford re-sent the deposition notice to Plaintiff via certified mail on October 14, 2008. (Exh. 6.) Plaintiff then claimed to be confused because she had received "two sets of documents," thus confirming she had received the original deposition notice. (Exh. 7.)

- On October 15, 2008, Plaintiff informed Ford's counsel that she had an appointment scheduled on the date selected for her deposition, and stated that she would be "appealing" the Court's order denying her request to be excused from the deposition. (Exh. 8.) Ford offered to change the date and/or time to accommodate Plaintiff's schedule, but confirmed that it was going forward with the deposition. (Exh. 9.) Plaintiff refused, stating that "I already informed you that I fully plan to Appeal my request for Protective Order once it is entered **and I will Appeal anything you file**."  (Exh. 10; emphasis added.)

- On October 21, 2008, the Court issued its written opinion and order denying in part Plaintiff's motion for protective order and providing that Plaintiff's deposition should take place pursuant to certain conditions. The order included a requirement that the

deposition be held at a neutral location, be conducted in 2-hour segments, and without the presence of a Company representative with whom Plaintiff has had confrontational contact. Ford immediately contacted the Court to locate an available conference room and notified Plaintiff of the location change. (Exh. 11.) Plaintiff responded that she would not be attending the deposition for various reasons, including that she would be filing a "motion." (Exh. 12.) (A consistent theme of Plaintiff's is that Ford cannot take any actions in her litigation when she has outstanding motions, which she thinks should first be addressed by the Court – and Plaintiff always has outstanding motions).

• Ford canceled Plaintiff's October 23rd deposition at her insistence and made one last attempt to schedule Plaintiff's deposition by sending her a letter on October 22, 2008 offering Plaintiff various dates in early November to conduct her deposition. (Exh. 13.) Plaintiff, again, refused to agree to any of the dates.

(Dkt. 59).

According to Ford, plaintiff refuses to appear for her deposition and proceed with her litigation, and cannot offer any reasonable excuse for her failure to do so. (Dkt. 59). Plaintiff's excuses continue to be her inability or unwillingness to proceed without counsel, the fact that she is awaiting rulings on the various motions and "appeals" she has filed, and her wishes to indefinitely delay discovery until she feels ready to proceed. Ford suggests that if plaintiff's excuses are accepted, this case will continue indefinitely at plaintiff's "whim." According to Ford, without plaintiff's deposition, it cannot adequately prepare its defense, and is forced to expend countless hours and expense sorting through plaintiff's

confusing and constant pleadings, "motions," and correspondence.  Ford also points out that plaintiff has been warned that her failure to cooperate could result in the dismissal of her complaint.  Ford suggests that the imposition of less drastic sanctions would be futile, given that plaintiff, through her words and actions, has repeatedly confirmed that she is not ready or willing to proceed with her case and will not appear for her deposition and/or will not cooperate if she were to appear.

    C.    <u>Plaintiff's Response</u>

Plaintiff argues that, on November 11, 2008, she hired an "attorney consultant" who contacted Ford to schedule her deposition and Ford refused to cooperate.  (Dkt. 70).  Plaintiff also asserts that she proposed deposition dates of November 19 and November 20, 2008 to Ford on October 25, 2008.  According to plaintiff, late in the afternoon on October 21, 2008, Ford "emailed the Plaintiff and demanded the Plaintiff appear in Ann Arbor for a deposition scheduled] on 10/23/200[8].  The Defendant could have chosen 10/27/2008 as listed in her letter (that she claimed to have mailed) but she did not."  (Dkt. 70, p. 8).  Plaintiff claims that she gave Ford alternate dates but Ford refused to reschedule her deposition. "After many unsuccessful email exchanges regarding the deposition of 10/23/2008 with the Counsel for the Defendant...on 10/23/2008 Plaintiff filed (Dkt 53)

responding and requesting a Scheduling Hearing, rescheduling of Defendant's

10/23/2009 deposition, time extension to Appeal Orders...." (Dkt. 70, p. 8).

Next, plaintiff states that she received a letter on October 25, 2008 from

Ford offering three alternate dates for her deposition, but plaintiff had

appointments on all three dates. Plaintiff then offered November 19 and

November 20, 2008 for her deposition, but Ford refused. Plaintiff also claims that

several outstanding motions should be resolved before her deposition, including

her appeal of the October 21 Order requiring her to submit to a deposition. (Dkt.

70, pp. 9-10).

On March 13, 2009, the Court issued an order allowing plaintiff the

opportunity to update the Court regarding whether she had yet submitted to the

deposition and whether she continued to take the position that she need not do so

until her appeal of the October 21 Order was resolved. (Dkt. 100). On March 20,

2009, plaintiff filed her supplemental brief. (Dkt. 104). In her supplemental

response, plaintiff asserts that once she received the protective order on October

25, 2008, at the direction of attorney Scott Combs, she supplied the deposition

dates of November 18, 19, and 20 to Ford's counsel, who refused to schedule the

deposition.  (Dkt. 104, pp. 4-5).[3]  According to plaintiff, Ford's worker's compensation counsel then scheduled a hearing on November 19, 2008 and Ford's counsel in this case states that she was not available on November 18 and 19, but never addressed November 20, 2008.  (Dkt. 104, p. 5).

    D.    <u>Ford's Reply</u>

Ford also points out that plaintiff has not responded to Ford's discovery requests that were properly served in early October.  (Dkt. 76, Ex. C). According to Ford, after receiving Ford's motion to dismiss, plaintiff suggested that she had been ready and willing to respond to Ford's discovery requests all along, but had not done so due to Ford's purported "faulty certificates of service."  (Dkt. 76). She then claimed the discovery responses were ready, but insisted that Ford's counsel must retrieve them from the courthouse.  (Dkt. 76, Ex. D).  Ford declined

---

[3]  The email message sent by plaintiff to Ford's counsel on October 25, 2008 states in part:

> "Of course, all things being said, if a date must be tentatively chosen at this point, as of today, I do not have any appointments [on] November 19th, or the morning of the 20th, and that provides enough time to have someone accompany me, however, as you know, **I am objecting to and Appealing the Order issued against my Protective Order**, as you know and my health remains a serious issue and medical information has been submitted for review with my requests for Motions."  (Dkt. 104, Ex. D, p. 2) (emphasis in original).

to incur this additional unwarranted expense.  *Id*.  According to Ford, plaintiff then

claimed she had a messenger who would deliver her discovery because she did not

want to mail it to counsel's office.  *Id*.  According to Ford, its counsel was never

contacted by plaintiff's messenger.  Ford's counsel tried to resolve the matter by

telling plaintiff to mail her discovery, deliver it, or have someone else deliver it

whenever it was ready – and Ford would do the same with respect to its discovery

responses.  *Id*.  Ford's counsel confirmed for plaintiff that she did not need an

appointment to come to counsel's office if she wished to deliver the responses as

opposed to mailing them.  *Id*.

In response to plaintiff's supplemental brief, Ford filed a brief on March 31,

2009.  (Dkt. 105).  According to Ford, plaintiff's claim that she offered several

dates for her deposition and paid a lawyer to resolve the issue with her deposition

(with whom Ford failed to communicate and/or cooperate) is inaccurate.  Ford

points out that two days before the discovery cut-off, on November 17, 2008, an

attorney with whom plaintiff consulted, mailed her a letter giving her an opinion

on how she should handle the issue regarding her deposition.  The attorney told

plaintiff that he felt it was "imperative that [she] proceed with [her] deposition."

(Dkt. 104, Ex. F).

According to Ford, plaintiff has consistently resisted Ford's good faith efforts to schedule her deposition.  Plaintiff's attorney "consultant" had one contact with Ford's counsel and he did not offer dates for plaintiff's deposition or indicate that she was willing to give the deposition.  According to Ford, on the morning of November 18, 2008, plaintiff sent an e-mail to Ford's counsel stating that she would appear for deposition on the following day (November 19th), disingenuously suggesting that she had been willing to appear all along, and asserting that it was Ford's fault that the deposition had not occurred.  (Dkt. 105, Ex. 1).  Ford responded, outlining the reasons that plaintiff's change in position was neither reasonable nor sincere and did not eliminate the prejudice to Ford as a result of plaintiff's continual unwillingness to cooperate.  (Dkt. 76-3).  Ford asserts that plaintiff's attorney "consultant" did not take plaintiff's case and there have been no substantive discussions about plaintiff's deposition since the expiration of the discovery period, or the December 30, 2008 Order affirming the Magistrate Judge's decision concerning plaintiff's deposition.  Ford also suggests that plaintiff's communications and the various pleadings she has filed since that time do not suggest that she is any more cooperative or enlightened with respect to the Federal Rules.  (Dkt. 105).

## III.    DISCUSSION

### A.    Legal Standards

In *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002), the Sixth Circuit

observed that the factors considered for dismissal under either Rule 37(b)(2) or

Rule 41(b) are the same:

> (1) whether the party's failure is due to willfulness, bad
> faith, or fault; (2) whether the adversary was prejudiced
> by the dismissed party's conduct; (3) whether the
> dismissed party was warned that failure to cooperate
> could lead to dismissal; and (4) whether less drastic
> sanctions were imposed or considered before dismissal
> was ordered.

"Although no one factor is dispositive, dismissal is proper if the record

demonstrates delay or contumacious conduct." *Id.*  In *Reyes*, the Court also held

that a party seeking to avoid the sanction of dismissal "has the burden of showing

that his failure to comply was due to inability, not willfulness or bad faith." *Id.*,

citing, *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th

Cir. 1988).  A district court does not abuse its discretion in dismissing a case "if a

party has the ability to comply with a discovery order and does not." *Id.*  The

pre-dismissal warning for failure to comply with the district court's orders is

pivotal to the determination of willfulness.  *See Harris v. Callwood*, 844 F.2d

1254, 1256 (6th Cir. 1988).

This Court also has the inherent authority to sanction litigants, which "derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Dell, Inc. v. Elles*, 2008 WL 4613978, *2 (6th Cir. 2008), citing, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991). Indeed, the court has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders. *Chambers*, 510 U.S. at 43-50. One specific judicial act within a court's inherent authority is to "fashion an appropriate sanction for conduct which abuses the judicial process," including dismissal of a lawsuit. *Dell*, at *2, quoting, *Chambers*, 510 U.S. at 44-45; *see also Gonzalez v. Ohio Cas. Ins. Co.*, 2008 WL 4277258, *1 (E.D. Mich. 2008) ("this court enjoys inherent authority to control its docket in promoting economies of time and effort for the court, the parties, and the parties' counsel.").

B.   Analysis and Conclusions

In the view of the undersigned, plaintiff's refusal to submit to a deposition on the terms set forth in the October 21 Order is unreasonable and violates both the Order and the Rule 37. While plaintiff claims that she did not have to submit to the deposition pending the disposition of her objections by Judge O'Meara, the undersigned suggests that plaintiff's position is not reasonable, given that she did

not move the stay the effect of the Order.  *See e.g.*, *Paxar Americas, Inc. v. Zebra Technologies Corp.*, 2006 WL 1071861, *1 (S.D. Ohio 2006) ("Under Fed.R.Civ.P. 72(a), magistrate judge orders on non-case-dispositive motions are effective when entered."); *In re Powerhouse Licensing, LLC*, 441 F.3d 467 (6th Cir. 2006) ("The magistrate judge concluded by ordering the documents produced within five days of the ... deposition. Petitioners filed objections and moved to stay the order."); *Citizens Ins. Co. of America v. Moyer*, 2006 WL 3289771, *1 (E.D. Mich. 2006) (The plaintiff's failure to produce the complete claim file and refusal to agree to the location of depositions were "not proper objections to the magistrate judge's order, which in fact granted defendants' motion to compel discovery and assessed substantial sanctions against plaintiff.").  Plaintiff's refusal to submit to a deposition based on the pendency of her objections is particularly unreasonable in light of her repeated claims in several briefings to this Court that she did, in fact, offer to submit to a deposition in October 2008 after the entry of the October 21 Order.  Plaintiff cannot take the position that she need not comply with the October 21 Order while, in the next breath, argue that she offered to submit to such a deposition.

It is apparent from the record that plaintiff had no intention of submitting to a deposition in October 2008 or at any other time.  For example, the October 25,

2008 email communication to Ford's counsel on which she heavily relies to

support her claim that she was ready, willing, and able to submit to a deposition

belies her claims:

> Of course, all things being said, if a date must be
> tentatively chosen at this point, as of today, I do not have
> any appointments [on] November 19th, or the morning of
> the 20th, and that provides enough time to have someone
> accompany me, however, as you know, **I am objecting
> to and Appealing the Order issued against my
> Protective Order**, as you know and my health remains a
> serious issue and medical information has been
> submitted for review with my requests for Motions.

(Dkt. 104, Ex. D, p. 2) (emphasis in original).  Plaintiff's purported offer to submit

to a deposition on November 19th or 20th appears tentative, conditional, and

subject to the resolution of her objections and various other motions.  Thus,

plaintiff's position that she was willing to submit to a deposition and that Ford is

really the obstructionist party is not borne out by the record.

In evaluating the facts of this case under the four factors set forth in *Reyes*,

the undersigned suggests that dismissal is an appropriate sanction for plaintiff's

conduct.  Plaintiff's failure to comply with the October 21 Order and submit to a

deposition appears to be based on willfulness, bad faith, or fault.  Plaintiff brought

this lawsuit and thus far has shown no willingness to follow the rules or to allow

Ford to conduct any meaningful discovery.  Based on the failure of plaintiff to

participate in discovery – both her deposition and written discovery – Ford is plainly prejudiced given that it will be unable to develop its defense to plaintiff's claims.  There is also no question that plaintiff was repeatedly warned that her failure to cooperate in discovery, follow the rules and comply with orders of this Court could lead to dismissal.

Finally, less drastic sanctions were imposed or considered before dismissal was ordered.  On several occasions, the Court explained in great detail to plaintiff what her obligations were as the plaintiff pursuing this lawsuit and her obligations to participate in the discovery process.  Plaintiff simply failed and refused to follow the rules.  Indeed, she simply "caused a lawsuit to be filed," and then "failed to comply with even the most basic and fundamental procedural rules." *Mason v. Hayes Lemmerz International Commercial Highway*, 2008 WL 123870, *2 (N.D. Ohio 2008).  Plaintiff has had multiple opportunities to correct her behavior and move this litigation forward.  She has failed and refused to do so. Plaintiff has failed to show that she satisfied her "burden of showing that [her] failure to comply was due to inability, not willfulness or bad faith."  *See Reyes, supra.*  Under the circumstances, the undersigned suggests that no sanction less drastic than dismissal is appropriate or would be effective.  The time and resources of this Court and of Ford should be expended no further on plaintiff's non-ERISA

Report and Recommendation
Motion for Partial Dismissal
*Grech v. Ford Motor Co.*; 08-10729

claims.  Based on the foregoing, the undersigned concludes that dismissal under the inherent power of the court and under Rule 37 is necessary and appropriate.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED** and that all of plaintiff's non-ERISA claims be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Report and Recommendation
Motion for Partial Dismissal
*Grech v. Ford Motor Co.*; 08-10729

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date: June 12, 2009                                s/Michael Hluchaniuk
                                                   Michael Hluchaniuk
                                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on June 12, 2009, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following:  Shannon V. Loverich, and I certify that I have
mailed by United States Postal Service the paper to the following non-ECF
participant: Kimberly Grech, 56041 Birkdale, Macomb Township, MI 48042.

                            s/James P. Peltier
                            Courtroom Deputy Clerk
                            U.S. District Court
                            600 Church Street
                            Flint, MI 48502
                            (810) 341-7850
                            pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion for Partial Dismissal
*Grech v. Ford Motor Co.*; 08-10729